UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Cassandra Hawkins, et al.

      v.                                     Civil No. 99-cv-143-JD
                                               Opinion No. 2008 DNH 125

Commissioner, New Hampshire
Department of Health and Human Services


O R D E R


The plaintiff class ("Class") moves to have the New
Hampshire Department of Health and Human Services held in
contempt of court for failing to comply with certain requirements
of the parties' Consent Decree, entered on January 26, 2004.[1]
The Department objects to the motion, asserting that it is
meeting the Decree's requirements.


Background

In March of 1999, several plaintiffs filed suit as a
proposed class action against the Department seeking dental
services for children under Title XIX of the Medicaid Act.[2]

---

[1]Because the Class sued the Commissioner in his official
capacity only, the action is against the Department rather than
the Commissioner, individually.  See Kentucky v. Graham, 473 U.S.
159, 165 (1985).

[2]"Medicaid is a cooperative federal-state program that
provides federal funding for state medical services to the poor.

After almost four and a half years of litigation and mediation efforts, the parties reached a settlement in September of 2003. The court certified the class and approved the proposed Consent Decree in January of 2004.  As part of the Decree, the court retained jurisdiction over the action for five years from the date of the order approving the Decree and for a sixth year to determine whether the Department was in compliance with the Decree during the fifth year.  In response to the Department's motion to clarify, an amended judgment was entered on February 27, 2004.

At the request of the parties, they were given additional time to resolve the question of an award of attorneys' fees and costs to the Class.  A mediator was appointed to assist in resolving the attorneys' fees and costs issue.  When mediation failed, the Department requested and was given additional time to respond to the request for fees and costs, which was granted, and also requested discovery, which was denied.  The issue of fees and costs was resolved by agreement on June 17, 2005.

---

State participation is voluntary; but once a State elects to join the program, it must administer a state plan that meets federal requirements.  One requirement is that every participating State must have an Early and Periodic Screening, Diagnosis, and Treatment (EPSDT) program."  Frew v. Hawkins, 540 U.S. 431, 433 (2004) (internal citation omitted).  An EPSDT program must include regular dental services.  Rosie D. v. Swift, 310 F.3d 230, 232 (1st Cir. 2002).

2

In the meantime, the parties disputed whether the Department was complying with the Decree.  On October 2, 2006, the court appointed a mediator to address the dispute.  When mediation was unsuccessful, the Class filed a motion to enforce the Decree in January of 2007.  Because of a lack of clarity in the Class's motion, the court ordered the Class to file a supplemental motion to address the relief sought.  On August 13, 2007, the court denied the motion and supplemental motion to enforce the consent decree because the Class failed to request a remedy that could be granted.  The court held, however, that Section IV of the Decree "is plain and means what it says.  The Department agreed to comply fully with federal EPSDT Medicaid laws.  The EPSDT laws are not too vague to be enforced, as the Department argues."  Order, Aug. 13, 2007, at *4.  The court denied the motions without prejudice to the Class to file a properly supported motion for appropriate relief.

<u>Discussion</u>

In the present motion, the Class contends that the Department is not complying with its obligations under the Decree to provide eligible families with accurate information about dentists who have openings for Medicaid patients, to provide timely dental care to eligible children, and to provide

3

orthodontic care to children in all of New Hampshire's counties.
As a remedy, the Class asks the court to hold the Department in
contempt, to compel the Department to comply with the cited terms
of the Decree, and to extend the period of the court's
jurisdiction for three years.[3]  The Department opposes the
motion, arguing that it is complying with the terms of the
Decree.

A.  Disputed Terms

     A consent decree is construed using the principles of
contract interpretation.  United States v. Charter Int'l Oil Co.,
83 F.3d 510, 517 (1st Cir. 1996).  "Contracts should be
interpreted to give effect to the parties' intentions expressed
by the writing, considering the subject matter, purpose, and
object of the contract."  Perry v. Wolaver, 506 F.3d 48, 53 (1st
Cir. 2007).  "Terms in a consent decree cannot be construed in a
vacuum; they must instead be read in the context of the decree as
a whole."  Quinn v. City of Boston, 325 F.3d 18, 30 (1st Cir.
2003).  If disputed terms are ambiguous, the court may consider

---

     [3]The Class represents that the court's jurisdiction began on
January 26, 2005.  The Decree was approved on January 23, 2004,
and judgment was entered on January 26, 2004.

extrinsic evidence to determine the parties' intent.  <u>Charter
Int'l</u>, 83 F.3d at 519.

    1.  <u>Accurate Provider Information</u>

The Decree requires the Department to provide Class members
with assistance in scheduling dental appointments by following a
prescribed procedure.  Decree, § VII(F).  As part of the
<u>procedure</u>, the Department is required to compile and "supply a
list of dentists, dental offices and dental clinics (hereinafter
"the List").  § VII(F)(1).  "[T]he List is intended to provide
supplemental information (additional names of enrolled dental
providers) . . . ."  <u>Id.</u>  The procedure also specifies how many
dental providers a Class member is expected to call before
seeking additional help from the Medicaid Client Services Unit
(within the Department) and the assistance the Unit must then
provide.

The Class previously sought the court's assistance in
enforcing the Decree's obligations.  The Class asserted, in part,
that the Department was not providing reasonably current
information about whether a dental practice was open to new
Medicaid patients as required by Section VII(F)(2) of the decree.
In response, the Department admitted that it had no regular
system for updating its provider list.  The Department

5

represented, on March 1, 2007, that "[a]s a result of [Class] counsel's efforts, the Department has made improvements to this process . . . [and] has hired a new staff member to assist Director Snow in maintaining the provider network.  As part of her duties, this new staff member will be contacting every active Medicaid in the network every 60 days and inquiring whether that provider is currently accepting new Medicaid patients."  Dkt. #1410, ex.2, at 16.

The court ultimately denied the Class's motion to enforce the Decree, without prejudice, because the Class failed to seek appropriate relief.  In that order, however, the court noted that the Department acknowledged difficulty in maintaining a current list of available providers of dental services.  The court directed the parties to use their best efforts to resolve the dispute that lead to that motion.  Less than a year later, however, the parties are again seeking the court's assistance in interpreting and enforcing the Decree.

The Class asserts that the Department is not providing "reasonably current information" about dental providers who will accept new Medicaid patients as is required by Section VII (F)(2) of the Decree.  Section VII(F)(2) states:

> Beginning twelve months after the date of the Final
> Court Order Approving the Decree, the Department shall
> add a new data element to the Medicaid Fee For Service

6

Provider File.  This data element shall identify
whether the provider's practice is known by the
Department to be open or closed to new Medicaid Fee For
Service patients.  The data element shall contain
reasonably current information.  The Department shall
implement a protocol for updating this data element,
the provider file and, by extension, the List as
defined in ¶ VII(F)(1).  A copy of the protocol shall
be provided to Plaintiff's Counsel within thirty days
of its adoption.  A copy of the new List will be
provided to the Plaintiffs' Counsel by the end of the
first year following the entry of the Final Court Order
Approving the Decree and on a quarterly basis for the
remainder of the Decree Term.

The Class contends that the Department is not providing
"reasonably current information" to Class members because the
Department's lists of dental providers include providers who are
not taking new Medicaid patients.  The Department argues that
"reasonably current information" does not mean "absolute
accuracy" and that information that is five months or more old is
"reasonably current."

Section VII(F)(2) requires the Department to provide the
Class's counsel with a copy of a new "List" of available dental
providers on a quarterly basis for the remainder of the Decree
term.  Although not explicit in the requirement, a reasonable
inference is that the Department will update its List on a
quarterly basis before sending a copy of the new List to Class
counsel.  Therefore, "reasonably current information" means

information that is updated on a quarterly basis each year of the
Decree term.

The Decree requires the Department to keep a reasonably
current List of available dental providers.  Available dental
providers are those who are accepting new Medicaid patients.  In
the context of the Decree, taken as a whole, "reasonably current
information" means a list of dental providers accepting new
Medicaid patients that is updated on at least a quarterly basis
each year for the term of the Decree.

    2.  <u>Timely Treatment</u>

The Class contends that the Department is not providing
timely dental services as it is required to do under Section IV
of the Decree.  Section IV requires the Department to comply with
federal law, including a list of federal statutes and regulations
pertaining to the Medicaid dental program for children.  The
court previously ruled that "Section IV is plain and means what
it says.  The Department agreed to comply fully with the federal
EPSDT Medicaid laws."  Order, Aug. 13, 2007.

    3.  <u>Orthodontic Services</u>

Again citing Section IV, the Class contends that the
Department is required to provide orthodontic care in all

counties in New Hampshire.  In particular, the Class asserts that
42 U.S.C. § 1396a(a)(1) and 42 C.F.R. § 431.50 require statewide
services.  The Department does not dispute the Class's
interpretation of the statute and regulation.


B.   Contempt

     To prove civil contempt, a plaintiff bears the burden of
showing that (1) the defendant had notice of the order, (2) "the
order was clear and unambiguous," (3) the defendant "had the
ability to comply with the order," and (4) the defendant violated
the order.  United States v. Saccoccia, 433 F.3d 19, 27 (1st Cir.
2005) (internal quotation marks omitted).  To the extent the
determination of any of the four elements for proving contempt
raises a factual issue, the plaintiff must present clear and
convincing evidence to succeed.  Id.  Clear and convincing
evidence is an intermediate standard between the beyond-a-
reasonable-doubt standard and the preponderance standard.  United
States v. Brand, 80 F.3d 560, 566 (1st Cir. 1996).

     If the plaintiff proves the elements of contempt, the
defendant may avoid contempt by showing changed circumstances so
that compliance with the order is now impossible.  United States
v. Rylander, 460 U.S. 752, 757 (1983).  A defendant may also
avoid contempt by showing that its "diligent efforts result[ed]

in substantial compliance with the underlying order." <u>AccuSoft</u>
<u>Corp. v. Palo</u>, 237 F.3d 31, 47 (1st Cir. 2001).  The defendant
bears the burden of proving either defense.  <u>See</u> <u>Rylander</u>, 460
U.S. at 757.  "[D]istrict courts enforcing public law consent
decrees have, in general, broad discretion in determining such
matters as whether the objectives of the decree have been
substantially achieved."  <u>Quinn</u>, 325 F.3d at 30.

    1.   <u>Notice of the Order</u>

It is undisputed that the Department had notice of the
Decree from the date that it was issued.

    2.   <u>Clear and Unambiguous</u>

The parties did not address this element for proving
contempt.  The court has previously held, however, that the
applicable Medicaid laws are clear and enforceable.

    3.   <u>Ability to Comply</u>

The parties did not directly address this element.

    4.   <u>Violation of the Order</u>

The Class argues that the affirmative defense of
"substantial compliance" is not available to the Department

10

because it agreed in the Decree to comply fully with federal law. The Class relies on the analysis in <u>Health Care for All, Inc. v. Romney</u>, 2005 WL 1660677 at *8 (D. Mass. July 14, 2005), and asserts that the Department is estopped from claiming a standard other than full compliance.[4]  The Department contends that for purposes of the Class's motion for a contempt order, the "substantial compliance" standard applies.

The parties' arguments conflate the showing necessary to prove contempt with the showing necessary to prove an affirmative defense to contempt.  In addition, the Class is confusing the terms of the Decree with the standard for contempt.

In the Decree, the Department agreed and was ordered to fully comply with federal law.  If the Class proves that the Department violated a clear and unambiguous provision of the Decree and that the Department had the ability to comply with the Decree at the time of the violation, to avoid contempt, the Department would have the opportunity to prove that compliance is now impossible or that it made diligent efforts to comply with

---

[4]In <u>Health Care</u>, the plaintiffs brought suit under 42 U.S.C. § 1983 to require the Commonwealth of Massachusetts to comply with Medicaid laws.  The court concluded that the statutory requirement of substantial compliance, 42 U.S.C. § 1396c, governed a state's eligibility to receive federal Medicaid funding and did not provide the standard for determining whether the state was meeting its obligations under the Medicaid laws. <u>Health Care</u>, 2005 WL 1660677 at *8.

the terms of the Decree and that it has achieved substantial compliance.  The substantial compliance defense, however, depends on the circumstances of the case "including the nature of the interest at stake and the degree to which noncompliance affects that interest."  AccuSoft, 237 F.3d at 47 (internal quotation marks omitted).

      a. Accurate Provider Information

As interpreted above, Section VII(F)(2) requires the Department to update the List of Medicaid dentists on a quarterly basis.  The Department states that it updates its "Medicaid Fee for Service Provider File" to identify whether dental providers are open or closed to new Medicaid Fee for Service patients, but it does not use that file to assist families in finding dental providers or to update the List of providers.  Although far from clear, it appears that the List of providers, which is used to assist patients in finding dentists who will accept Medicaid patients, has been updated occasionally, but not with regularity, and was last updated based on a survey sent on January 18, 2008.  The Department does not explain when the January survey results were incorporated into the List.  The Department also does not indicate when the List of providers next will be updated.

12

At present, it appears that the Department does not update the List of providers on a regular basis, much less every ninety days.  Therefore, the Department is failing to provide reasonably current information, meaning a list of providers of dental services who will take new Medicaid Fee for Service patients, that is updated every ninety days.

    b.  <u>Timely Dental Care</u>

The Class argues that the Department is not complying with the EPSDT Medicaid laws incorporated into Section IV of the Decree that require the Department to provide all eligible children with EPSDT services on a timely basis.  In particular, the Class contends that 42 U.S.C. § 1396a(a)(8) requires the Department to provide dental services to eligible children with "reasonable promptness."[5]

States, like New Hampshire, that participate in Medicaid must submit a plan for providing medical assistance, including

---

[5]Other circuits have interpreted "assistance" as used in § 1396a(a)(8) to mean financial assistance, not actual medical services, making states responsible for promptly determining eligibility and making prompt payment but not for providing services or treatment.  <u>See, e.g.</u>, <u>Okla. Chapter of Am. Acad. of Pediatrics v. Fogarty</u>, 472 F.3d 1208, 1214 (10th Cir. 2007).  The First Circuit, however, has not made that distinction.  <u>See</u> <u>Bryson</u>, 308 F.3d at 88–89; <u>see also</u> <u>Health Care</u>, 2005 WL 1660677 at *9–*10.  The Department does not argue here that "assistance" as used in § 1396a(a)(8) is limited to financial assistance.

EPSDT dental services, that meets certain statutory requirements. § 1396a(a); see also Rosie D., 310 F.3d at 232; Bryson v. Shumway, 308 F.3d 79, 81-82 (1st Cir. 2002).  Section 1396a(a)(8) requires that a state plan "provide that all individuals wishing to make application for [services] under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals."  Section 1396a(a)(43) requires a state plan to inform all eligible persons of the availability of EPSDT services, to provide or arrange to provide EPSDT services when requested, to arrange for needed corrective treatment, and to report specified information to the Secretary of Health and Human Services about services provided under the plan.

The Class contends that the Department is in contempt of the Decree's requirement that EPSDT services be provided to eligible children with reasonable promptness.  As evidence of the Department's contempt, the Class points to the Department's records.  The Class asserts that although the Department adopted a schedule of six-month screenings, its records show that the majority of children enrolled in Medicaid did not receive any dental examination for an eleven-month period in fiscal 2007.

The Department agrees that it must effectively inform parents that screening services are available, urge parents to

14

seek services for their children, and implement measures to
assist parents in getting services for their children.  The
Department contends that it is required to make screening
services available to those who request them, but it is not
obligated to guarantee that all eligible children receive dental
screening services.  Therefore, the Department asserts, it is not
in contempt of the Decree because it is doing all that it is
required to do.

The Department appears to misunderstand the Class's
position.  The Class is not contending that the Department is
required to ensure that every eligible child receives EPSDT
services.  Instead, the Class argues that a low percentage of
eligible children received services, which is evidence that the
Department is not meeting its obligation to provide services with
reasonable promptness.

The Department is required to "arrange for provision of
dental screenings using a periodicity schedule of every six
months beginning at three years of age."  § VII(B).  The
Department's report for fiscal year 2007, dated October of 2007,
provides percentages of Class member children who received
screenings during eleven months of that fiscal year.  Only 22% of
the two-year-olds and only 35% of three-year olds received
screenings.  In the age groups between four and fourteen, the

15

percentages were between 50% and 58%.  The numbers dropped as age increased to only 25% of twenty-year olds who received screenings.  On average, less than half of the Class members received a dental screening during fiscal year 2007, despite the Department's six-month screening schedule.

In response, the Department argues that 55% of eligible children in 2006 and 62.3% of eligible children in 2007 had paid dental claims.[6]  Those figures are not sufficiently explained to

---

[6]In support of its arguments, the Department relies on the affidavit of Margaret Snow, DMD, who is the Dental Director for the Department.  Dr. Snow provides the statistics to support the Department as follows:

According to information in the third annual report [for fiscal year 2006], based on data reported by Dr. Thomas Grannemann in the office of Medicaid Business and Policy, 30,382 of the 55,659, or 55% of continuously-enrolled children in Medicaid had paid claims for dental procedures in FY 2006.  According to data reported to me by Andrew Chalsma in the Office of Medicaid Business and Policy, 32,803 children, or 62.3% of the 52,655 continuously enrolled [sic] children age 2 through 20 years had paid claims for dental services in FY 2007.

Doc. #1426, Ex. 7, ¶ 11.  As stated, the information Dr. Snow provided is not based on her personal knowledge, and therefore, is not properly included in her affidavit.  In addition, the Department reported in its documentation to the Class, that there were 56,443 enrolled members of the Class during fiscal year 2007 rather than 52,655, as reported by Dr. Snow.

be persuasive.[7]  In addition, the 2006 annual report indicates that the average monthly percentage of clients using all dental services during the 2006 state fiscal year was 45.95%, not 55% as the Department represents.

The Department also contends, based on Dr. Snow's affidavit, that between May 1 and October 31 of 2007, there were 72,111 children enrolled in Medicaid and that 50,957 of those children received dental screenings.  Dr. Snow explains that the larger numbers reflect additional children who were not continuously enrolled in Medicaid during a one-year period and included all submitted claims, even though some of the claims were not eligible for payment.

The Department contends that its evidence shows that it is complying with Medicaid requirements.  It further argues that any deficiency in the number of children actually receiving services is not due to Department's failure to comply with its obligations

---

[7]For example, Dr. Snow states in her affidavit, based on information from "EDS," which she identifies as the Department's Medicaid fiscal agent, that the number of Class members receiving treatment was determined based on the number of claims paid.  The number of claims paid does not necessarily equal the number of children who received service because one child could have more than one claim paid.

17

under federal law and the Decree because it is the responsibility
of parents and caregivers to request services.[8]

The Department is taking an overly narrow view of its
obligations under the Medicaid laws.  Section 1396a(a)(8)
requires timely assistance to all eligible children.  To that
end, states are required to set standards to provide timely
services and must establish a system to measure whether timely
services are being provided to eligible children.  See Rosie D.,
410 F. Supp. 2d at 26-28; Health Care, 2005 WL 1660677 at *10.
In addition, because the EPSDT program is aimed at children who
may be subject to "culturally-based explanations for low
utilization and high rates of disease, [a defendant must explain
why] a program that intends to serve such populations should not
be expected to develop measures designed to mitigate the negative
impact of such potential influences."  Id. at *11.

The Department's own report shows that a large percentage
of eligible children did not receive screenings during the 2007
fiscal year, which is evidence that the Department is not
providing those services on a timely basis.  Although the 2007
deficiency may not by itself provide clear and convincing

---

[8]The Department speculates but does not offer evidence that
the reason so many children have not received services is because
their parents or caregivers have not requested them.

evidence of a violation, the Department is at least on notice
that something is not working and needs to be addressed.  If more
than half of the Class did not receive a dental screening in
2007, despite the Department's obligation to provide screenings
on a six-month schedule, and the Department ignored the problem,
the Department is not complying with the requirements of the
Medicaid laws and the Decree.

      c.   <u>Orthodontic Services</u>

     The parties agree that Medicaid law, as included in the
Decree at section IV, requires the Department to provide
orthodontic services to Class members.  The Class contends that
the Department is violating the Decree by referring Class members
who live in Coos, Carroll, and Belknap Counties to orthodontists
in the southern part of New Hampshire, which would require a 300
mile round trip in some cases.  The Department responds that the
three northern counties either do not have orthodontists or the
orthodontists there will not accept new Medicaid patients.  The
Department also represents that it remedies the problem of
distance by reimbursing families for mileage and by providing
volunteers to drive patients to appointments.

     The Class relies on <u>Clark v. Kizer</u>, 758 F. Supp. 572 (E.D.
Cal. 1990), to support its theory that the Department is in

violation of the Decree because it is not providing orthodontic services in the three northern counties.  In <u>Clark</u>, the plaintiffs alleged, among other things, that the state was in violation of the statewide availability requirement in 42 U.S.C. § 1396a(a)(1) and 42 C.F.R. § 431.50.  The district court concluded that under those provisions, Medicaid services must operate uniformly across the state.  <u>Id.</u> at 580.  The court held that California was not providing uniform Medicaid services across the state because dentists would not accept new Medicaid patients through the telephone referral service in twelve counties, and specialists rejected Medicaid patients in twenty-seven counties.  <u>Id.</u>

In this case, the Department does not dispute that because of the lack of orthodontists in the three northern counties, those services are not readily available to Medicaid patients in that part of the state.  Based on the record presented, the Department is not providing statewide orthodontic services. The Department, however, recites the efforts it has made and continues to make to enlist orthodontists and to provide orthodontic services to Class members in that area.  Given the record presented, the Class has not shown by clear and convincing evidence that the Department had the ability to provide orthodontic services in the three northern counties.

20

C.   Summary

The Class has not carried its burden to show that the
Department is in contempt of the Decree.  With the analysis
provided in this order, however, the Department is put on notice
that it is required to update its provider List every ninety
days.  Failure to do so, if properly documented and if the
Department lacks proof of adequate defenses, will result in a
finding of contempt.  In addition, the record presented here at
least suggests that the Department is not providing screening
services to most of the Class members, which is unacceptable,
unless adequate reasons exist for the poor performance.
Similarly, the lack of orthodontic services in the northern
counties could violate the Decree, if the Class proved the
necessary elements, unless the Department could persuasively
demonstrate adequate defenses.


Conclusion

For the foregoing reasons, the plaintiffs' motion for a
contempt order (document no. 1422) is denied, without prejudice
to file a properly supported motion if the circumstances support
seeking that relief.

In this order, the court has clarified the meaning of §
VII(F) and has put the Department on notice that grounds may

21

exist to support contempt, although that relief was not sufficiently presented.  A new motion seeking an order requiring the Department to show cause why it should not be held in contempt shall be supported by a memorandum of law that addresses each element of the standard for proving contempt as outlined in this order, along with sufficient factual support for each element to meet the clear and convincing standard of proof.

Before again asking the court to issue a contempt order, however, counsel shall make good faith efforts to resolve the parties' differences, including using the assistance of a mediator, which is in the best interests of the Class and conserves the parties' and the court's resources.

SO ORDERED.

Joseph A. DiClerico, Jr.
_____
Joseph A. DiClerico, Jr.
United States District Judge

July 10, 2008

cc:  Kay E. Drought, Esquire
     Ruth Dorothea Heintz, Esquire
     Danielle Leah Pacik, Esquire
     Nancy J. Smith, Esquire
     Rebecca L. Woodard, Esquire

22